CHARLES W. MACE, JR., and EMMA L. MACE,
Plaintiffs,

*vs.*

LEONARD D. BOOTH and MARTHA SIMS BOOTH,
Defendants.

*New Castle, December 7, 1955.*

*Joseph Donald Craven* and *Joseph P. Hurley,* Wilmington, for plaintiffs.

*Thomas J. Healy, Jr.,* Wilmington, for defendants.

SEITZ, Chancellor. Plaintiffs seek a permanent injunction restraining defendants from certain alleged violations of restrictive covenants found in their deeds. After hearing argument on the stipulated facts the Court also viewed the premises and this is the final decision thereon.

The sole issue is whether Lot 259, Section B of Wilmington Manor is subject to residential restrictions or whether it may be used for business purposes. Wilmington Manor has previously been

held to be subject to a residential plan. See *Tubbs v. Green,* 30 *Del.Ch.* 151, 55 *A.2d* 445. It is admitted that what is now Lot 259 was set apart for commercial purposes when the original, general restrictions were placed on Wilmington Manor. Subsequently, admittedly about 1945, a residence was built on Lot 259, which abuts the DuPont Highway. In 1954 the defendants purchased Lot 259 and caused the residence to be removed from the lot. They then sought and still seek to use Lot 259 for business purposes, *viz.,* in connection with the operation of a gas station on the adjoining lot owned by them which faces on DuPont Highway.

Plaintiffs say that Paragraph 13 of the deed restrictions rendered Lot 259 subject to residential restrictions when a residence was erected thereon and that such restrictions continue to apply to such lot until the end of the restrictive period. They deny that the removal of the residence from the lot automatically reinstates the original provision designating the property for commercial use.

Defendants say that Paragraph 13 is not clear insofar as it may be considered as applicable to the situation here presented. And being unclear, they say the ambiguity should be resolved in favor of a construction which would permit commercial use. They also claim, as an independent ground, that conditions have so changed in that area that it is inequitable to enforce the restrictions because of surrounding commercial properties. As part of this argument they point to the fact that Lot 259 has recently been zoned for business use by the County Zoning Commission.

I first consider whether Lot 259 is formally subject to residential restrictions at the present time. Paragraph 13 of the restrictions binding on this lot reads as follows:

> "13. The above covenants, conditions, restrictions, easements and reservations shall not apply to Blocks Nos. 41, 42, 48, 49, 54 and 55 as said Blocks are shown on the Plan of Wilmington Manor, of record as aforesaid in Deed Record R, Vol. 34, Page 601, which Blocks are reserved for recreation centers, nor shall the said covenants, conditions, restrictions, easements and reservations apply to Lots Nos. 1 to 10 inclusive of Block 8,

Lots Nos. 1 to 10 inclusive of Block 7 and Lots Nos. 1 to 7 inclusive of Block 1, as said Lots and Blocks are shown on the plan of Wilmington Manor, as the same is of record as aforesaid in Deed Record R, Vol. 34, Page 601, which said lots are reserved and designated as business districts; provided, however, the designation of such blocks or lots of land for recreational centers and business districts shall not prevent the erection of dwelling houses in such designated districts or centers in whole or in part at any future time, provided that any lot or lots upon which any such dwelling house is to be erected shall be subject to and bound by the foregoing covenants, conditions, restrictions, easements and reservations."

It seems clear to the Court that the quoted language rendered Lot 259 subject to residential restrictions once a residence was built thereon. The question then is whether the removal of the residence automatically removed the residential restrictions applicable thereto. The quoted language of the restrictions does not contain any language authorizing a change of use based upon a removal of a residence. Moreover, considering that the restrictions are for the benefit of surrounding property owners the equities would seem to the Court to call for the conclusion that once operative, the restrictions bind the lot with residential restrictions for the full period of the restrictions. Once a lot is dedicated to residential use by the erection of a residence, other people may well rely thereon in purchasing and erecting properties adjacent thereto. It would seem most inequitable to conclude that, having purchased a residential property on the basis of these restrictions and the reasonable assumption that the adjacent lot would continue to be used for residential purposes, thereafter it could be used for commercial purposes. Since such a restriction is patently for the benefit of the surrounding landowners, I cannot believe that the restrictions should be construed to be an "on again, off again" proposition.

I conclude that Lot 259 continues to be subject to the residential restrictions even though the residence has been removed.

Defendants also argue that conditions have so changed in Wilmington Manor that it is inequitable to enforce the residential

restrictions. I start by pointing out that defendants purchased Lot 259 at a time when it contained a residence and was therefore, to their knowledge, subject to the restrictions. Moreover defendants did not purchase the lot until 1954 and all the changed conditions to which they refer took place and were evident to the most casual observer prior to the date of their purchase. I have no doubt that it might be more desirable and more suitable from defendants' point of view to use this property for commercial purposes. But that is not the test here. The fact that this property has also been zoned for business use does not alter my conclusion. Admittedly the zoning provision does not affect the private restrictions. Defendants have failed to show any equities which would warrant the denial of relief to these plaintiffs who are home owners in Wilmington Manor.

I conclude that a permanent injunction should issue restraining the defendants from the use of Lot 259 for non-residential purposes. The parties have agreed that the Court need not rule on any matter raised in connection with Lot 262.

Order on notice.